## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br>   v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as the executors of the ESTATE OF JEFFREY E. EPSTEIN,<br><br>      Defendants. | Case No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Jane Doe ("Doe" or "Plaintiff") alleges, upon personal knowledge and information and belief, as follows:

## INTRODUCTION

1.      Jeffrey Epstein ("Epstein") was one of the world's most powerful, prolific, and notorious pedophiles.  For years, he exploited and sexually assaulted dozens if not hundreds of young vulnerable girls for his personal satisfaction.  He molested, fondled, and raped them, luring them to his home under the pretext that they would be giving him a "massage," and then slowly escalated his abuse.  He paid what was for them much needed, life-changing amounts of money so that they would return to him and he could continue his cycle of exploitation and abuse.

2.      A successful businessman, Epstein applied all of his finely honed skills to acquiring access to more and more young girls.  His staff provided a seemingly endless series of children who would come to his home—often multiple girls at the same time.  The girls would sit in a waiting room while Epstein finished assaulting the child who came before them.  In just one day, Epstein would sexually assault multiple girls in his private, well-guarded homes.  And, at least from in or around 2002 to in or around 2005, Epstein did so regularly.  Each girl was paid by Epstein or his staff.

3.      Plaintiff Jane Doe is one of Epstein's many victims.  She met him when she was fourteen years old or younger, in or around 2002.  For the following three years, Epstein routinely abused and exploited Doe at his home in New York City.

4.      In July 2019, Epstein was arrested and charged for his abuse of Doe and others in an indictment filed by the United States Attorney's Office for the Southern District of New York (the "Indictment").  As alleged in the Indictment, over the course of many years, Epstein sexually exploited and abused dozens of minor girls at his homes in New York City, Palm

Beach, Florida, the U.S. Virgin Islands, and other locations.  Upon information and belief, Plaintiff Jane Doe is the person described as "Minor Victim-1" in the Indictment.

5.      Not surprisingly, Epstein's abuse of Doe has forever scarred her and altered her life.  As a result of his abuse, Doe never received a high school education.  She suffers from post-traumatic stress disorder, anxiety, and depression.  Her severe emotional injuries manifest in myriad ways: she often finds herself crying; she is unable to form healthy emotional relationships with men; she often cannot sleep through the night or fall asleep at all; she has panic attacks; and she is constantly afraid for her young daughter.

6.      Epstein, by contrast, was able to operate his brazen sex trafficking scheme with relative impunity for most of his life.  He used his money and connections to ensure that he and his co-conspirators would never face true justice for their heinous crimes.  And, now, with his reported suicide on August 10, 2019, Epstein cannot be tried for being the criminal that he was. But, at the very least, the victims of his crimes, like Jane Doe, can obtain recovery for all the harm that he caused them.

## THE PARTIES

7.      Plaintiff Jane Doe is a citizen of the State of New York.  At all times relevant to this suit, Doe was a minor child living in New York City.

8.      Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

9.      Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## JURISDICTION AND VENUE

10.      Plaintiff is domiciled in New York.

11.    Jeffrey Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death.  As the legal representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands, and jurisdiction in this Court is therefore proper.  28 U.S.C. § 1332(c)(2).

12.    At all times material to the events alleged herein, Plaintiff resided in New York, New York, and Defendant maintained a residence in New York, New York.

13.    All of the events giving rise to these causes of action occurred in the Southern District of New York, thus venue in this district is proper.  28 U.S.C.  § 1391(b)(2).

## JURY DEMAND

14.    Plaintiff hereby demands a trial by jury on all of her claims in this action.

## FACTUAL ALLEGATIONS

### Defendant Epstein's Scheme of Exploitation and Abuse

15.    Defendant Jeffrey Epstein was born in Brooklyn in 1953.

16.    Epstein graduated from a public high school in Brooklyn, and later took college classes at Cooper Union and New York University.  After briefly working as a teacher at a prestigious private school in Manhattan and as a partner at Bear Sterns, in 1981 Epstein established J. Epstein & Co., a money management business, which he operated until the time of his death.

17.    Little is known about the actual source or extent of Epstein's wealth, but by 1998 it is believed that Epstein owned: the largest private home in Manhattan at 9 East 71st Street; a 7,500 acre ranch in New Mexico; a mansion in Palm Beach, Florida; an apartment in Paris; a Boeing 727: and a private island in the U.S. Virgin Islands.  By the early 2000s, Epstein became

4

known as one of the wealthiest individuals in the United States, routinely socializing and working with many of the most powerful men in the world.

18.     Epstein put his extraordinary resources and wealth to work exploiting and abusing teenage girls.  Whether at his homes in New York City or Palm Beach, or on his private island, Epstein created a vast enterprise designed to lure vulnerable children to his house, where he would subject them to varying types of sexual abuse.

19.     Epstein believed there was nothing wrong with his conduct.  He spoke openly about his "interest in young women."  He told a *New York Times* reporter that "criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable."  In an attempt to justify his sexual interest in children, "he pointed out that homosexuality had long been considered a crime and was still punishable by death in some parts of the world," thereby equating homosexual relations between consenting adults with the sexual abuse of children.

20.     In 2008, Epstein entered into a non-prosecution agreement with the United States Attorney's Office for the Southern District of Florida (the "Non-Prosecution Agreement") after he was investigated for his sexual assault of young girls in Florida.  Epstein agreed to plead guilty to just two counts of solicitation of prostitution under Florida state law and served just over one year in a local jail.  While briefly incarcerated, Epstein was afforded extraordinary privileges, including being able to leave the jail to work in his office twelve hours per day, six days per week.

**Plaintiff Jane Doe Becomes a Victim of Epstein's Scheme of Exploitation and Abuse**

21.     Jane Doe was born in 1988.  For most of her life, Doe was raised by a single mother who supported Doe and her younger sister.

5

22.     Doe had a difficult childhood that was in many ways marked by financial strain. Doe's sister suffered from serious medical conditions that required extensive medical care. Doe always worried about whether her family had enough money and thought about how she could help her sister then and into the future.

23.     When she was approximately fourteen years old, in or around 2002, Doe was approached by a teenage girl from her neighborhood who appeared to be slightly older than Doe. The girl told Doe about an opportunity to earn money and offered to introduce her to a wealthy man. Doe would subsequently learn that this man was Epstein.

24.     By that time, Doe's family was in serious financial straits. Her mother and sister were sharing a bedroom. In order to pay their monthly rent, her family rented the other bedrooms in their apartment to strangers, leaving no room for Doe. Doe was forced to move out. She stayed with a rotating cast of friends and took odd jobs after school to try to help her family pay rent. Hoping to help her family and support herself, Doe agreed to meet Epstein.

25.     The girl brought Doe to Epstein's mansion at 9 East 71st Street. When they entered the mansion, they were greeted by a maid who showed them into a waiting room near the entrance to the mansion. Doe can recall thinking that the mansion looked like the castle in the fairytale "Beauty and the Beast," one of her favorite Disney movies at the time.

26.     After waiting a short period, a maid escorted the two girls to an elevator and led them from the elevator to a dimly lit room with a massage table in the middle, where she left the girls alone.

27.     Minutes later, Epstein entered the room wearing only a robe. He introduced himself as "Jeffrey," and asked Doe her name. Epstein also asked Doe her age, and she responded truthfully.

28.     Epstein then removed his robe and laid face down on the massage table.

29.     The girl who recruited Doe removed her shirt and indicated to Doe that she should do the same.  As instructed, Doe removed her shirt and began to massage Epstein's back, with the other girl coaching her through what Epstein expected.

30.     During the massage, Epstein turned over onto his back, exposing his penis to the two girls.  Epstein then began to touch his penis and directed Doe to pinch his nipples.  Doe followed orders and touched Epstein's chest while he stared intensely at her and masturbated. Finally, Epstein ejaculated and then cleaned himself off with a towel.

31.     Afterwards, Epstein put on a robe and retrieved three hundred-dollar bills from his robe pocket, which he handed to Doe.

32.     Within a day or two, the other girl contacted Doe, and told her that Epstein wanted to see her again.  She provided Doe with a phone number she could use to schedule another visit.  Doe called the number and spoke with a woman who arranged for her to return to the house and Epstein.

33.     Doe returned to Epstein's mansion on 71st Street a few days later.  As before, Doe was led to the massage room.  Epstein entered the room wearing a robe.  Having been instructed by the girl who brought her the first time to remove her shirt, Doe removed her shirt when Epstein came into the room.  Topless, she rubbed Epstein's back, until he turned over and masturbated.  Again, Epstein handed Doe three hundred dollars.

**Epstein's Abuse of Doe Escalates**

34.     Doe returned to Epstein's home again and again.  As described below, as her visits became more frequent, Epstein's sexual abuse of Doe became more severe.

7

35.     After several visits, Epstein began to touch Doe's bare chest while he masturbated at the conclusion of his massage.  In earlier encounters, he touched Doe's chest only with his hands, but after a few visits he began to touch Doe's breasts with his lips and tongue.

36.     In subsequent visits, Epstein directed Doe to remove her pants, shirt, and bra so that she was massaging him while wearing only her underwear.

37.     Later, Epstein began to touch Doe's genitals over her underwear with a vibrator. In visits after that, he would pull Doe's underwear to the side and touch her genitals directly with a vibrator.

38.     Eventually, Epstein demanded that Doe be completely naked during his massages. On multiple occasions, Epstein demanded that Doe lay down on the massage table with him. Once she acquiesced, Epstein touched Doe's genitals with his fingers, inserting his fingers inside of her vagina and causing her pain.  While hurting her, Epstein pushed Doe to moan in supposed pleasure and asked her whether she was "enjoying" what he was doing.  He demanded that she orgasm and would not stop touching her until he believed that she had orgasmed.

39.     On other occasions, Epstein also placed Doe's hand on his penis and made her move her hand up and down his penis and fondle his testicles until he ejaculated.  He moaned aggressively while forcing Doe to touch his penis and barked orders at her about how to touch him.

40.     On one occasion, Epstein brought Doe to a bedroom in his home instead of the massage room.  In the bedroom, Doe encountered an unfamiliar naked adult woman lying in a bed.  The woman appeared to be over the age of eighteen.  Another young girl close in age to Doe was also in the room.  Epstein directed Doe and the other girl to remove their clothing and

get into the bed with the naked adult woman.  While in the bed, Epstein directed Doe and the two others to touch his genitals and to touch one another's genitals.

41.     While Epstein physically and emotionally hurt and exploited Doe, a vulnerable young girl, she also became financially dependent on him.  She stopped attending school and spent almost all her time "working" at his home, gratifying him sexually, or bringing other girls to do the same.

42.     All told, Doe was sexually assaulted by Epstein countless times over the course of three years.

43.     Doe's experience with Epstein fit within what is now known to have been a common pattern for the abuser.  He would find vulnerable young girls who needed money and slowly test their boundaries—first asking them to remove their own clothes and massage him and then, over time, he would escalate his conduct, touching them in ways that would become more invasive, violent, and painful.  As these children grew to rely financially on Epstein, he would only cause them more and more harm.

44.     As demonstrated by the above, Epstein treated the girls he abused in the same way Ghislaine Maxwell, his co-conspirator, viewed them: like "they[] [were] nothing, these girls," like "[t]hey [we]re trash."

**Epstein's Abuse of Doe Was Directly and Indirectly Facilitated by His Co-Conspirators**

45.     Epstein was only able to repeatedly abuse Doe and countless other girls with the aid of his many co-conspirators.  Some of Epstein's co-conspirators directly enabled his abuse of Doe by, for example, arranging for Doe to come to Epstein's home to be assaulted or by participating in assaults of Doe alongside Epstein.  Other co-conspirators indirectly aided Epstein's abuse of young women by giving Epstein access to young women, providing him with

9

substantial funds, boosting his public profile, and helping to cleanse his public image after his 2008 prosecution.

47.     Two of Epstein's employees specifically facilitated his abuse of Doe. Epstein had two adult, female assistants who scheduled most of Doe's visits to Epstein's home and maintained regular contact with Doe.  Upon information and belief, the assistants were Sarah Kellen and Lesley Groff.

48.     During scheduling phone calls, Kellen and Groff often asked Doe to bring other girls with her to Epstein's home. At times, Kellen and Groff directed Doe to bring with her specific girls who Epstein had assaulted before, requesting them by name.

49.     Though sometimes Epstein directly paid Doe after abusing her, Doe was often paid by Kellen or Groff.  Doe was also paid by Kellen or Groff whenever she brought other girls to see Epstein.

50.     Upon information and belief, as described in Paragraph 40, Doe was sexually assaulted by another Epstein employee.

51.     Notably, Kellen and Groff were both listed in Epstein's 2008 Non-Prosecution Agreement as potential co-conspirators in Epstein's crimes.

52.     Epstein paid hundreds of thousands of dollars to his potential co-conspirators in November 2018, shortly after a newspaper reported on the unusually lenient Non-Prosecution Agreement Epstein received in 2008, which suggests that Epstein was trying to buy his co-conspirators' silence.

53.     In addition to assistance provided by Epstein's employees, Epstein built and benefitted from a vast network of powerful supporters, including billionaires, prominent researchers, and former and current politicians, who provided him with access, opportunity, and

means to abuse young women, and who helped to repair his public image after his 2008

prosecution.

**Doe's Life Is Materially and Negatively Altered by Epstein's Abuse**

54.    When Doe turned seventeen, she decided to extricate herself from Epstein.  But

by that time, Epstein's abuse of Doe had already materially and negatively altered her life.

55.    Without a high school diploma, and with a very low sense of her own self-worth,

Doe was forced to take dangerous and often degrading jobs.  She still has not been able to

complete high school, though she hopes to do so in the future.

56.    For more than a decade, Doe has suffered from severe mental anguish because of

Epstein's abuse.  She suffers from extreme anxiety and depression, which cause her to

experience difficulty falling asleep, difficulty staying asleep (because she often wakes up with

nightmares), difficulty eating, rapid heartbeat, and panic attacks.  Her physical and emotional

injuries impact her daily functioning, making it difficult to go to work and take care of her young

daughter and her ailing mother.

57.    Doe has been diagnosed with post-traumatic stress disorder (PTSD) in connection

with Epstein's sexual abuse.  She regularly experiences the symptoms of PTSD, including

flashbacks to Epstein's abuse, which make it difficult for her to take care of herself and her

family.

58.    Doe struggles to be physically and emotionally intimate with her husband because

of the negative associations she now has with intimacy based on her traumatic experiences with

Epstein.

59.    Doe also struggles to be the mother she wants to be for her daughter.  She is

terrified to let her daughter interact with adult men because all she can think about is what

Epstein did to her.  Doe also feels scared and uncomfortable when anyone—even a trusted loved one—touches her daughter because of her overwhelming fear that what happened to Doe might happen to her daughter.

60.     All of these harms can be traced directly to Epstein and his co-conspirators.

**Epstein's Recent Criminal Case, Death, and Will**

61.     In March 2019, Plaintiff was contacted by authorities investigating Epstein's decades-long scheme to abuse and exploit children.  Plaintiff confidentially cooperated with the investigation, recounting Epstein's abuse in painstaking detail over the course of many meetings.

62.     In July 2019, Epstein was indicted by the Unites States Attorney's Office for the Southern District of New York, based in large part on information provided by Plaintiff.  Indeed, upon information and belief, Plaintiff was identified as "Minor Victim-1" in the Indictment and was the only victim in the Indictment who Epstein had assaulted in New York.

63.     On August 10, 2019, Epstein was found dead in his jail cell at the Metropolitan Correctional Center, where he was being held pending trial.  Upon information and belief, New York City's medical examiner concluded Epstein died by suicide.

64.     On August 15, 2019, Epstein's last will and testament (the "Will") was filed in the Probate Division of the Superior Court of the Virgin Islands.

65.     The Will indicated that it was executed by Epstein on August 8, 2019 at the Metropolitan Correctional Center, and that it was witnessed by Mariel Colón Miró and Gulnora Tali.  The Will was accompanied by affidavits from Darren K. Indyke and Richard D. Kahn attesting to their "Oath of Willingness to Serve as Executor and Appointment of Local Counsel." Mr. Indyke and Mr. Kahn also filed a Petition for Probate and for Letters Testamentary in the Superior Court of the Virgin Islands.

66.     The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate."  The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated…to the then acting Trustees of The 1953 Trust."

67.     On August 26, 2019, Defendant Darren K. Indyke filed a Certificate of Trust with the Superior Court for the Virgin Islands, confirming that he and Defendant Richard D. Kahn are the two Trustees of The 1953 Trust.  *See* Certificate of Trust, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

68.     On September 6, 2019, Magistrate Judge Carolyn P. Hermon-Percell of the Superior Court of the Virgin Islands ordered that Epstein's will be admitted to probate and authorized Mr. Indyke and Mr. Kahn to administer the estate.  *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sep. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sep. 6, 2019).

## CAUSES OF ACTION

### COUNT ONE
### Sexual Assault

69.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

70.     On numerous occasions over three years, Epstein made violent sexual demands on Plaintiff while placing his hands on her body in a position of dominance and control and while touching Plaintiff in violent and invasive ways.

71.     These demands, often made when Epstein and Plaintiff were alone, were intended to frighten Plaintiff into submitting to Epstein's sexual demands and placed Plaintiff in apprehension of harm.

72.     This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

73.     This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").  *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## COUNT TWO
## Sexual Battery

74.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

75.     On numerous occasions over three years, Epstein intentionally, violently, and invasively used his fingers, lips, tongue, mouth, and foreign objects to make unwanted, unlawful, harmful, and offensive physical contact with Plaintiff's body.

76.     This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

77.     This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").  *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## COUNT THREE
## Intentional Infliction of Emotional Distress

78.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

79.     Epstein's three-year campaign of sexual abuse against a teenaged Plaintiff was extreme and outrageous conduct that shocks the conscience.

80.     Epstein's serial sexual assaults, committed during the course of a methodical plan of recruitment, enticement, and attack, inflicted severe pain and anguish upon Plaintiff.

81.     Epstein directed this conduct at Plaintiff and knew that it would cause severe and lasting emotional distress.  Indeed, the conduct caused Plaintiff severe and lasting emotional distress and serious injuries to her mental health.

82.     This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").  *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## COUNT FOUR
## Negligent Infliction of Emotional Distress

83.     Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

84.     Epstein invited Plaintiff, then a teenaged girl, into his home for a period of three years.  Once under his supervision, Epstein proceeded methodically to sexually abuse Plaintiff.

85.     Epstein's conduct was extreme and outrageous, breached a duty owed directly to Plaintiff, endangered her physical safety, and caused severe and lasting emotional distress and serious injuries to Plaintiff's mental health.

86.     This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130").  *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe prays for this Court to:

87.     Issue a judgment declaring that Defendants, as legal representatives of the Estate of Jeffrey E. Epstein, are liable for the violations of law alleged in this case;

88.     Award actual, compensatory, statutory, consequential and punitive damages;

89.     Award pre-judgment and post-judgment interest at the highest rate allowed by law; and

90.     Grant such further relief as this Court may deem just and proper.


Dated:  September 18, 2019

Roberta A. Kaplan
Julie E. Fink
Jenna M. Dabbs
Justin Horton
Alexandra K. Conlon (admission pending)

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
jfink@kaplanhecker.com
jdabbs@kaplanhecker.com
jhorton@kaplanhecker.com
aconlon@kaplanhecker.com

*Attorneys for Plaintiffs*