UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>                    -v.-<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br>*in their capacities as the executors of the Estate*<br>*of Jeffrey E. Epstein,*<br><br>                    Defendants. | 19 Civ. 8673 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge[1]:

Plaintiff Jane Doe[2] brings this action under New York law against

Darren K. Indyke and Richard D. Kahn in their capacities as appointed

executors of the Estate of Jeffrey Epstein (together, "Defendants").  Plaintiff

asserts tort claims for sexual assault, sexual battery, intentional infliction of

emotional distress, and negligent infliction of emotional distress, for which she

seeks actual, compensatory, statutory, consequential, and punitive damages.

Defendants seek to dismiss Plaintiff's claim for punitive damages, arguing that:

(i) New York law applies to the punitive damages claim because the torts

allegedly occurred in New York; (ii) New York law bars the recovery of punitive

damages against a decedent tortfeasor's estate; and (iii) even if the law of the

United States Virgin Islands ("USVI") were to apply, it also would prohibit the

recovery of punitive damages against a decedent tortfeasor's estate.  For the

---

[1]     Sarah Pyun, a rising second-year student at Fordham Law School and an intern in my
        Chambers, provided substantial assistance in researching and drafting this Opinion.

[2]     Plaintiff has been granted leave to proceed pseudonymously.  (Dkt. #26).

reasons explained below, the Court dismisses Plaintiff's claim for punitive damages.

## BACKGROUND[3]

### A.   Factual Background

The Court accepts as true the well-pleaded allegations of the Complaint for purposes of this motion.  In broad summary, Plaintiff presents a disturbing and corrosive pattern of sexual abuse and emotional manipulation of herself and others over the course of three years by Jeffrey Epstein.  (Compl. ¶¶ 15-60).  At all times relevant to this suit, Plaintiff was an economically disadvantaged minor child living in New York City.  (*Id.* at ¶¶ 12, 22).  She was raised by her single mother for the majority of her life.  (*Id.* at ¶ 21).  Financial hardships afflicted Plaintiff and her family throughout her childhood, in part because of the extensive medical care required to treat Plaintiff's younger sister, who suffered from serious medical conditions.  (*Id.* at ¶ 22).

In or around 2002, when Plaintiff was approximately fourteen years old, she learned of Epstein through an older teenage girl from her neighborhood, who approached Plaintiff with an opportunity to meet a "wealthy man" and earn money.  (Compl. ¶ 23).  By that time, Plaintiff had been forced to move out of her home and take on certain jobs after school to help support her family.  (*Id.* at ¶ 24).  As a result, Plaintiff agreed to meet Epstein.  (*Id.*).  The older

---

[3]     The facts contained in this Opinion are drawn primarily from Plaintiff's Complaint ("Complaint" or "Compl." (Dkt. #1)), which is the operative pleading in this case.

For ease of reference, the Court refers to Defendants' opening brief as "Def. Br." (Dkt. #47); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #51); Defendants' reply brief as "Def. Reply" (Dkt. #55); and Plaintiff's Reply Letter as "Pl. Rep. Lt." (Dkt. #62).

teenage girl brought Plaintiff to Epstein's Upper East Side mansion, where they waited in a room until Epstein arrived, wearing only a robe.  (*Id.* at ¶¶ 25-27). Epstein asked Plaintiff her name and age, to which she responded truthfully. (*Id.*).  With this knowledge, Epstein began to test Plaintiff's boundaries by engaging in escalating levels of sexual abuse on numerous occasions, paying her several hundred dollars after each encounter.  (*Id.* at ¶¶ 42-43).

The Complaint is harrowing in its detail of how Epstein's actions and demands intensified over the course of three years, to the point where he caused Plaintiff physical pain by forcing her to express pleasure as he violated her. (Compl. ¶¶ 34-44).  The Complaint further alleges that Epstein was aided by his associates, who allowed, facilitated, and participated in his abuse of Plaintiff and other young women.  (*Id.* at ¶¶ 45-53).  As Plaintiff grew financially reliant on Epstein, she stopped attending school to spend her time "working" at his home, gratifying him sexually, or bringing other girls to do the same, just as she had been brought to him initially.  (*Id.* at ¶ 41).  Epstein's conduct, for which the adjective egregious seems an understatement, caused Plaintiff to develop post-traumatic stress disorder; she continues to suffer from lasting emotional repercussions that have affected her mental health, family life, and education.  (*Id.* at ¶¶ 54-80).

Plaintiff was one of several minor victims who suffered sexual abuse and exploitation at the hands of Epstein.  (Compl. ¶¶ 43-44).  In July 2019, Epstein was indicted in this District for his decades-long child abuse scheme after an investigation to which Plaintiff contributed by cooperating, confidentially, with

authorities.  (*Id.* at ¶¶ 61-62).  On August 8, 2019, two days before his reported suicide, Epstein executed his last will and testament (the "Will"), which provided for his Estate to be probated in the USVI.  (*Id.* at ¶¶ 63-65).  Epstein appointed Defendants to administer his Estate.  (*Id.* at ¶¶ 65, 67-68).  Plaintiff seeks to obtain recovery from the Estate for the years of pain and suffering Epstein inflicted on her.  (*Id.* at ¶¶ 6, 63).

## B.   Procedural History

Plaintiff filed the Complaint in this action on September 18, 2019.  (Dkt. #1).  The Complaint seeks relief for actual, compensatory, statutory, consequential, and punitive damages.  (Compl. ¶ 88).  On November 1, 2019, Plaintiff filed a letter notifying the Court of several cases brought by other plaintiffs against the Epstein Estate alleging similar claims of sexual abuse. (Dkt. #16).  All such cases, including the present one, were later consolidated for discovery purposes before Magistrate Judge Debra Freeman.  (Dkt. #23).

On December 2, 2019, Defendants filed a letter requesting a pre-motion conference concerning their anticipated motion to dismiss Plaintiff's punitive damages claim.  (Dkt. #35).  Plaintiff filed a letter in opposition on August 4, 2019.  (Dkt. #36).  The Court held a pre-motion conference on December 11, 2019.  (Dkt. #40 (transcript)).  Following the conference, the Court set a briefing schedule and denied a stay of discovery pending resolution of Defendants' motion to dismiss.  (Dkt. #39).

On January 15, 2020, Defendants filed their partial motion to dismiss, arguing that New York law applies to the issue of punitive damages because

4

the alleged torts occurred in New York and, further, that as a matter of New York law, punitive damages cannot be recovered against personal representatives of an estate.  (Dkt. #46, 47).[4]  Defendants further argue that even if USVI law were to apply, as Plaintiff claims, punitive damages would still be unavailable.  (*Id.*).  On February 14, 2020, Plaintiff filed a memorandum of law in opposition to Defendants' motion.  (Dkt. #51).  The memorandum was supported by a declaration from Roberta A. Kaplan, Esq., that attached copies of Epstein's Will and the Complaint filed in *Government of the United States Virgin Islands* v. *Estate of Jeffrey E. Epstein, et al.*, ST-20-CV-14 (V.I. Super. Ct. Jan. 15, 2020).  (Dkt. #52).  Defendants filed a reply brief on February 28, 2020.  (Dkt. #55).

On April 28, 2020, Defendants filed a letter notifying the Court of supplemental authority from a sister court in this District.  (Dkt. #61).  Plaintiff filed a reply letter on April 29, 2020.  (Dkt. #62).  On April 30, 2020, Defendants filed a letter with additional supplemental authority.  (Dkt. #64).  And on June 19, 2020, Defendants filed a letter with still further supplemental

---

[4]   Plaintiff contends that Defendants' motion is more properly denominated a motion to strike under Federal Rule of Civil Procedure 12(f), inasmuch as the motion does not seek to dismiss any of Plaintiff's four causes of action, but rather seeks to excise Plaintiff's demand for punitive damages.  (*See* Pl. Opp. 1 n.1).  As a sister court in this District concluded in *Mary Doe* v. *Indyke*, — F. Supp. 3d —, No. 19 Civ. 10758 (PAE), 2020 WL 2036707, at *4 (S.D.N.Y. Apr. 28, 2020), this Court need not weigh in on this conceptual debate because Defendants' motion to dismiss under Rule 12(b)(6) can, alternatively, be treated as a motion to strike under Rule 12(f).  *See* 5C Charles A. Wright & Alan R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed.) ("[T]he technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint.").

authority.  (Dkt. #75).  Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

### A.    Applicable Law

When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal quotation marks omitted).  A plaintiff will survive a motion to dismiss if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." (internal quotation marks, brackets, and citation omitted)).[5]

**B.    Analysis**

The issue before the Court concerns whether the executors of Epstein's Estate may be held liable for punitive damages — recovery that would indisputably be available were Epstein still alive.  (Pl. Opp. 2; Def. Reply 1). Defendants assert at the outset that New York estate law, rather than USVI law, applies to bar punitive damages against executors of an estate in a personal injury suit.  (*See* Def. Br. 1-2).  Plaintiff maintains that USVI law governs her punitive damages claim and allows it to stand, but that even if New York law applied, relevant choice-of-law rules enable her to bring this action under USVI law.  (*See* Pl. Opp. 1-2, 17-18).  By contrast, Defendants argue that, even under USVI law, punitive damages are unavailable.  (*See* Def. Br. 4-6).  The Court addresses each of these arguments in turn.

---

[5]    A similar analysis would obtain were the motion construed as one to strike Plaintiff's claim for punitive damages.  Under Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Courts in this District have found that "[t]he standard that applies to a motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim."  *Bd. of Managers of Trump Tower at City Ctr. Condo.* v. *Palazzolo*, 346 F. Supp. 3d 432, 471 (S.D.N.Y. 2018) (internal citations and quotations omitted); *see generally Rosa* v. *TCC Commc'ns, Inc.*, No. 15 Civ. 1665 (WHP), 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016) (granting motion to strike punitive damages claim).  Courts have also observed that such motions are "generally disfavored."  *Oram* v. *SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013).

1.   **The New York Statute Authorizing Personal Injury Actions Against a Decedent's Estate Precludes Punitive Damages Claims in Such Actions**

To begin, Defendants seek dismissal of Plaintiff's punitive damages claim on the ground that New York law bars such claims in personal injury suits against representatives of a decedent's estate.  The statute in question, § 11-3.2(a)(1) of New York's Estates, Powers and Trusts Law ("EPTL"), provides:

> No cause of action for injury to person or property is lost because of the death of the person liable for the injury. For any injury, an action may be brought or continued against the personal representative of the decedent, *but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury.*

EPTL § 11-3.2 (a)(1) (emphasis added).

As three recent cases in this District, presenting similar claims against the same Defendants, have recognized, this provision clearly prohibits the award of punitive damages in the situation at hand.  *See Mary Doe* v. *Indyke*, — F. Supp. 3d —, No. 19 Civ. 10758 (PAE), 2020 WL 2036707, at *3 (S.D.N.Y. Apr. 28, 2020) (holding that EPTL § 11-3.2(a)(1) involves a categorical preclusion of punitive damages against a deceased tortfeasor's estate); *see also Lisa Doe* v. *Indyke*, No. 19 Civ. 7773 (ER), 2020 WL 3073219, at *14-15 (S.D.N.Y. June 9, 2020) (same); *Doe 15* v. *Indyke*, No. 19 Civ. 10653 (PAE), 2020 WL 2086194, at *2 (S.D.N.Y. Apr. 30, 2020) ("New Mexico common law as announced by the state supreme court, like EPTL § 11-3.2(a)(1), bars punitive damages in a personal injury action against a tortfeasor's estate.").  Both federal courts addressing constitutional-tort claims under New York law, and

state courts in personal injury actions governed by New York law, have concluded similarly.  *See Mary Doe*, 2020 WL 2036707, at *2 (collecting New York federal and state cases).

This position is also reflected in the majority of United States jurisdictions, as the Restatement (Second) of Torts indicates.  *See* Restatement (Second) of Torts § 908 cmt. a (Am. Law Inst. 1979) ("Punitive damages are not awarded against the representatives of a deceased tortfeasor.").  The common justification for the majority rule is that "punishment and deterrence — the recognized bases for imposing punitive damages on a tortfeasor — are not advanced by imposing punitive damages on his or her estate."  *Mary Doe*, 2020 WL 2036707, at *3; *see also Blissett* v. *Eisensmidt*, 940 F. Supp. 449, 457 (N.D.N.Y. 1996) (brackets and citation omitted) ("There is a strong policy against the assessment of punitive damages against an estate on account of wrongful conduct of the decedent.").

Thus, as a threshold matter under New York law, punitive damages are unavailable in a case against personal representatives of a decedent tortfeasor's estate.

## 2.    New York Law Governs Plaintiff's Punitive Damages Claim

Plaintiff does not dispute that she would be barred from recovering punitive damages if her claim were strictly governed by EPTL § 11-3.2(a)(1).[6]

---

[6]    In *Lisa Doe* v. *Indyke*, No. 19 Civ. 7773 (ER), 2020 WL 3073219, at *14 (S.D.N.Y. June 9, 2020), the court rejected the plaintiff's argument that New York's "clear statutory bar on punitive damages" should not apply because Epstein's death was self-inflicted.

Instead, Plaintiff makes two distinct arguments: (i) New York choice-of-law rules allow Plaintiff to seek punitive damages under USVI law, even if she pursues her personal injury claims under New York law; and (ii) Plaintiff has a statutory right to sue Epstein's estate under either USVI or New York law.  (*See* Pl. Opp. 1-2, 17-18).

With respect to Plaintiff's first argument, this Court, like many courts before it, recognizes New York choice-of-law rules, which apply an "interest analysis" to resolve conflicts of law in tort actions.  *See, e.g., Mary Doe*, 2020 WL 2036707, at *5; *Golden* v. *Wyeth, Inc.*, No. 04 Civ. 2841 (JS), 2013 WL 4500879, at *1-2 (E.D.N.Y. Aug. 20, 2013).  As construed by the Second Circuit, the "interest analysis" requires application of the law of the jurisdiction with the greatest interest in the litigation.  *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (brackets, alteration, and internal quotation marks omitted).  Further, the jurisdiction with more "significant contacts" relating to the purpose of the law in conflict has the greater interest.  *See GlobalNet Financial.Com, Inc.* v. *Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (citing *Schultz* v. *Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).

Torts are divided into two types: conduct-regulating rules, such as "rules of the road," and loss-allocation rules, "such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit."  *In re Thelen*, 736 F.3d at 220 (citation omitted).  "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction *where the tort occurred* will generally apply because that jurisdiction has the greatest interest in regulating

10

behavior within its borders." *Id.* (quoting *Cooney* v. *Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)) (emphasis added).

The parties do not dispute that punitive damages rules are conduct-regulating. *See, e.g.*, *Mary Doe*, 2020 WL 2036707, at *5 (collecting cases reaching the same conclusion). Defendants argue that because Plaintiff's causes of action occurred entirely in New York, EPTL § 11-3.2(a)(1) applies to bar punitive damages. (Def. Br. 3). Plaintiff counters that the conduct-regulating classification does not end the inquiry, because a court must still consider whether there is a "good reason not to apply" the law of the jurisdiction where the tort occurred. (Pl. Opp. 9 (quoting *Nat'l Jewish Democratic Council* v. *Adelson*, 417 F. Supp. 3d 416, 426 (S.D.N.Y. 2019))).

In particular, Plaintiff identifies two circumstances that, she claims, give the Court "good reason" to apply USVI law to the issue of punitive damages. (*See* Pl. Opp. 8-11). *First*, Plaintiff contends that the fact that Defendants are USVI domiciliaries counsels in favor of applying USVI estate law. (*See id.* at 9-10). And in this regard, Plaintiff relies on *Adelson* to argue the importance of deferring to a defendant's domicile in applying a particular jurisdiction's law. (*See id.* at 9, 11; Pl. Rep. Lt. 1, 2 n.2 (citing *Adelson*, 417 F. Supp. at 426 (reasoning that defendant's domiciliary, Nevada, "points in favor" of applying Nevada punitive damages law))). But while Plaintiff's invocation of *Adelson*'s "points in favor" language is well-argued, that language is ultimately only a partial recitation of the interest-analysis test described above. *See GlobalNet,* 449 F.3d at 384 (quotations and citations omitted) (explaining how under the

11

interest-analysis test, significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort). In context, the weight afforded to domicile in *Adelson* was largely due to the irrelevance of the locus of the tort factor, as the suit's sole connection to New York was that it was filed there. *Adelson*, 417 F. Supp. 3d at 426. Furthermore, Adelson's previous attempt to avail himself of the benefits of Nevada defamation law granted Nevada the greater interest in governing punitive damages as compared to New York. *Id.*

To describe *Adelson* is thus to highlight its insignificance to the instant case. At all times material to the conduct alleged in the Complaint, Plaintiff was domiciled in New York. All of the alleged torts took place in the home Epstein maintained in New York. (*Cf.* Compl. ¶ 13 ("All of the events giving rise to these causes of action occurred in the Southern District of New York, thus venue in this district is proper.")). Further, Plaintiff chose to sue in New York, where her causes of action are timely pursuant to the New York Child Victims Act, N.Y.P.L. § 130.52-55. (*See id.* at ¶¶ 73, 77, 82, 86). And Plaintiff's case, like *Mary Doe* and unlike *Adelson* with Nevada law, "does not build on a prior litigation in, or based on the law of, the USVI." *Mary Doe*, 2020 WL 2036707, at *7. These facts, taken together, demonstrate that New York's interest in applying its punitive damages rules to this case outweighs the USVI's interest, which exists only because of Epstein's decision to probate his estate there. *See Lisa Doe*, 2020 WL 3073219, at *15 (concluding that New York punitive damages law, rather than USVI punitive damages law, applied to plaintiff's case "alleg[ing] torts under New York law committed entirely within New York"). If

12

anything, it is the USVI, and not New York, that has a "merely fortuitous relationship with the case," minimizing its interest in governing punitive damages.  *Adelson*, 417 F. Supp. 3d at 427 (citation omitted).

In addition to her domicile argument, Plaintiff asserts that the USVI has a greater interest than New York in preventing Epstein and his Estate from availing themselves of the benefits, but not the burdens, of USVI probate law. Despite her plausible policy concerns, Plaintiff provides little in the way of precedential support for her contention that "where a tortfeasor commits suicide to avoid imposition of punitive damages, considerations of fairness no longer counsel in favor of protecting his estate." (Pl. Opp. 12).  Nor does she substantiate her claim that "[p]rohibiting punitive damages in this case would not protect innocent heirs; it would punish traumatized victims deserving of adequate compensation." (*Id.*).  In *Mary Doe*, the plaintiff asserted a comparable argument, claiming that Epstein's decision to alter his Will shortly before his suicide was strategically motivated, and thus his executors should not be permitted to selectively avail themselves of certain benefits of USVI law but avoid aspects that they do not like.  *Mary Doe*, 2020 WL 2036707, at *5. But, as with the *Mary Doe* court, this Court is left unpersuaded.  *Id.* at *6 ("[Mary] Doe's point that the estate may prosper from being probated in the USVI is disconnected from her claims.").

Meanwhile, New York's interest in governing Plaintiff's punitive damages claim remains clear, as the place of the allegedly wrongful conduct "generally has superior interests in protecting the reasonable expectations of the parties

who relied on the laws of that place to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future." *Mary Doe*, 2020 WL 2036707, at *6 (quoting *AHW Inv. P'ship, MFS* v. *Citigroup, Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016) (internal quotations and citations omitted)). With numerous personal injury actions pending against the Epstein Estate under New York law for alleged conduct that largely occurred in New York, the state has abundant interest in "vindicating the rights of [these] victim[s]" and "assuring that the perpetrator of that abuse is adequately punished and deterred." *Id.* And as previously noted, New York's interest is reinforced by the fact that Plaintiff's suit is timely only by virtue of the New York Child Victims Act. (*See* Compl. ¶¶ 73, 77, 82, 86). *Cf.* 5 V.I.C. § 31(5)(A) (specifying two-year statute of limitations for personal injury actions in the USVI).

Separate and distinct from her choice-of-law argument, Plaintiff asserts a statutory right to sue Epstein's Estate under either USVI or New York law. *First*, Plaintiff claims a right to sue under USVI law because the Complaint does not specifically invoke EPTL § 11-3.2(a)(1). The Court rejects this argument out of hand: Plaintiff's ability to sue Defendants originates from EPTL § 11-3.2(a)(1), as her causes of action are all personal injury claims based on alleged conduct that occurred exclusively in New York. (Compl. ¶¶ 12-13).[7] Plaintiff's strategic decision to omit reference to the provision in her Complaint

---

[7]     *See generally*  N.Y. Gen. Constr. Law § 37-a (defining "personal injury" as including "an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another").

does not change this fact, let alone preclude New York law from applying.  *See Mary Doe*, 2020 WL 2036707, at *6 ("It is problematic for [plaintiff] to cherrypick within [EPTL § 11-3.2(a)(1)], invoking the part that authorizes a personal injury suit against an executor while disclaiming the balance, which delimits the recovery available in such a suit.").  As the district court in *Blissett* recognized, "it would be an anomalous situation indeed if plaintiff were allowed to proceed with this [§] 1983 action … because of [§] 11-3.2(a)(1), while at the same time he was allowed to recover relief, in the form of punitive damages, which clearly is beyond the scope of relief which that statute authorizes." *Blissett*, 940 F. Supp. at 457.  Plaintiff asserts that *Blissett* is inapplicable, as the claim there sought punitive damages for federal civil rights violations, which are governed by different choice-of-law principles than personal injury cases.  (Pl. Opp. 18 n.9).  However, the *Blissett* court concluded that this was a distinction without a difference:  The plaintiff there argued that the statute was irrelevant because he sought redress for a constitutional violation, not a personal injury.  *Id.*  The court disagreed because "stripped to its core, in essence, [the plaintiff's] claim is one for personal injury."  *Id.*  It is only logical, therefore, to infer that the anomaly identified in *Blissett* would counsel against the grant of punitive damages that are disallowed under EPTL § 11-3.2(a)(1).

*Second*, Plaintiff asserts that she possesses a statutory right under USVI law because it, specifically 15 V.I.C. § 601, allows personal injury claims against a decedent tortfeasor's estate.  Whether Virgin Islands law or New York law applies to her ability to sue the Estate, Plaintiff claims she is authorized to

bring this action under the law of either jurisdiction.  But this argument fails for several reasons, including that: (i) Plaintiff cites no legal authority permitting a New York litigant to file a personal injury suit under § 601 in New York in order to recover for torts occurring in New York; and (ii) Plaintiff does not explain how she can bring this lawsuit pursuant to § 601 and avail herself of USVI law governing punitive damages, while simultaneously maintaining that the action is timely pursuant to the New York Child Victims Act.

*Finally*, echoing her choice-of-law argument, Plaintiff asserts that the doctrine of dépeçage permits different jurisdictions' laws to govern the availability of punitive damages and the availability of a cause of action.  (*See* Pl. Opp. 19).[8]  The *Mary Doe* court resolved the same question by holding that dépeçage does not invite the application of two different sets of laws to a single issue, and thus may not be invoked to cherrypick from EPTL § 11-3.2(a)(1). *Mary Doe*, 2020 WL 2036707, at *6.  Plaintiff argues that the availability of punitive damages and the availability of a cause of action are not a "single issue," and therefore that dépeçage may be invoked.  (*See* Pl. Rep. Lt. 3).  In particular, Plaintiff points out that the "New York Court of Appeals has recognized that the doctrine [of dépeçage] may sometimes require that a plaintiff's demand for punitive damages be analyzed under the law of a state other than the one under whose law the cause of action arises."  *Fed. Hous.*

---

[8]     Under the doctrine of dépeçage, "the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues."  *Hunter* v. *Greene*, 734 F.2d 896, 901 (2d Cir. 1984) (citation omitted).

*Fin. Agency* v. *Ally Fin. Inc.*, No. 11 Civ. 7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012).  In such an analysis, "a court must consider the object or purpose of the wrongdoing, and give controlling effect to the law of the jurisdiction with the strongest interest in the resolution of the particular issue presented."  *Id.* (citation omitted).  While this statement may be persuasive in a vacuum, the *Ally Financial* court still applied the punitive damages law of the states in which the alleged fraud took place, reasoning that the states where the "primary conduct allegedly took place ha[d] a stronger interest in deterring such [fraud]."  *Id.* at *5.  By extension, and regardless of whether Plaintiff's alleged causes of action and prayer for punitive damages are considered a single issue, New York has the stronger interest in resolving Plaintiff's punitive damages claim.  Thus, dépeçage would be inapplicable here.

### 3.    USVI Law Is Likely in Accord with New York Law Under a *Banks* Analysis

Even if the Court assumed, *arguendo*, that USVI law applied, the outcome would be the same.  The USVI does not have a statute addressing the availability of punitive damages against a decedent tortfeasor's estate.  *See Powell* v. *Chi-Co's Distrib., Inc.*, No. ST-13-TOR-14, 2014 WL 1394183, at *2 n.11 (V.I. Super. Ct. Apr. 3, 2014) (pointing out the lack of standard for asserting punitive damages in the USVI).  When considering a question not foreclosed by statute or precedent, USVI courts apply three "non-dispositive" factors: (i) whether any USVI courts have previously adopted a particular rule; (ii) the position taken by a majority of courts from other jurisdictions; and (iii)

17

most importantly, which approach represents the soundest rule for the USVI. *Gov't of Virgin Islands* v. *Connor*, 60 V.I. 597, 600 (2014) (citing *Matthew* v. *Herman*, 56 V.I. 674, 680 (2012)).  The test, known as the "*Banks* analysis," determines the common-law disposition of the USVI on a given issue.  *See id.* (citing *Banks* v. *Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (2011)).

Plaintiff argues that the *Banks* analysis makes "clear that punitive damages are available in this case."  (Pl. Opp. 13).  Defendants champion the opposite conclusion.  (Def. Br. 4-5).  This Court is ultimately persuaded by the position taken by its sister court, *viz.*, that the USVI would not allow the imposition of punitive damages on a tortfeasor's estate, thereby aligning itself with New York, the majority of states, and § 908 of the Restatement (Second) of Torts.  *See Mary Doe*, 2020 WL 2036707, at *7-8 (citing supporting cases); *accord Doe 15,* 2020 WL 2086194, at *1.

As to the first factor, multiple courts in the USVI have recited the Restatement's rule precluding punitive damages.  *See, e.g.*, *Hamilton* v. *Dowson Holding Co.*, 51 V.I. 619, 628 (D.V.I. 2009); *Booth* v. *Bowen*, Civ. No. 2006-217 (CVG), 2008 WL 220067, at *5 (D.V.I. Jan. 10, 2008).  While these cases address punitive damages in wrongful death actions, they are still relevant, in spite of Plaintiff's objections, as support for the USVI's longstanding application of § 908 of the Restatement (Second) of Torts within the USVI.  *See Pappas* v. *Hotel on the Cay Time-Sharing Ass'n*, 69 V.I. 3, 15 n.8 (V.I. Super. Ct. 2015) (relying on this accepted application in finding the Restatement's provision to be the soundest rule for USVI courts with respect to the imposition of punitive

18

damages and local public policy).  Plaintiff has not cited any countervailing authority within the USVI.

Plaintiff claims that Defendants exaggerate the degree to which the second *Banks* factor favors prohibiting punitive damages against an estate, but concedes that this is the majority rule.  (Pl. Opp. 16).  That "most of the jurisdictions adopting the majority rule" have passed a statute codifying a prohibition of punitive damages against a decedent's estate, and the USVI has not, does *not* suggest that the majority rule would not apply in the USVI.  This is especially true considering that, before the adoption of the *Banks* analysis less than a decade ago, USVI courts strictly followed the Restatements.  *See Isaac* v. *Crichlow*, 63 V.I. 38, 58-60 (V.I. Super. Ct. 2015) (concluding, pursuant to a *Banks* analysis, that § 222A of the Restatement (Second) of Torts reflects the common law of the USVI, despite the fact that the Restatements "no longer constitute binding legal authority in this jurisdiction"); *Mary Doe*, 2020 WL 2036707, at *7 (explaining how the distinction between adopting this result by statute or by court decision "does not appear germane to the *Banks* inquiry").

Plaintiff focuses on the third factor, asserting that the *Mary Doe* court reached its conclusion by "essentially eliminating the third *Banks* factor — *i.e.*, which approach represents the soundest rule for the USVI — from its analysis, even though that factor is the 'most important' of the three."  (Pl. Rep. Lt. 3 (citing *Antilles Sch., Inc.* v. *Lembach*, 64 V.I. 400, 428 (V.I. 2016))).  The soundest rule, according to Plaintiff, is to permit punitive damages because:

(i) the USVI Attorney General has articulated this very position on behalf of the
Virgin Islands in her pending lawsuit against the Estate; and (ii) punitive
damages in the USVI are designed both to punish wrongdoers and to deter
others from engaging in similar conduct.  This Court does not give weight to
the Attorney General's suit, as "the decision by a government lawyer to attempt
to obtain such damages in a high-profile case involving allegations of extreme
conduct ... do[es] not speak to the question that the third *Banks* factor assays."
*Mary Doe*, 2020 WL 2036707, at *8.  And while the Court does not deny the
USVI's interest in punishing tortfeasors on its land, or even its interest in
holding Epstein's Estate accountable for his tortious actions in the USVI,
Plaintiff's alleged causes of action arose exclusively in New York.  The Court is
skeptical that that it would be the policy of the USVI to regulate conduct
occurring in New York.[9]  Thus, consideration of the *Banks* factors leads the
Court to conclude that USVI law, if applied, would likely be in accord with New
York law and bar Plaintiff's recovery of punitive damages in this action.[10]

---

[9]     Notably, none of the available cases from the USVI relying on the Restatement
        questions the validity of its prohibition against punitive damages recovery from a
        decedent's estate.  But courts have held that it is that "the Restatement (Second) of
        Torts § 908(2) represents the soundest rule for the Virgin Islands, and is in accord with
        local public policy."  *Powell* v. *Chi-Co's Distrib., Inc.*, No. ST-13-TOR-14, 2014 WL
        1394183, at *2 n.11 (V.I. Super. Ct. Apr. 3, 2014).

[10]    Because the Court finds New York law applies to this issue, and USVI law would be in
        accord, it declines Plaintiff's request to certify the question to the Supreme Court of the
        Virgin Islands.

**CONCLUSION**

To be clear, the conduct alleged in Plaintiff's Complaint is as shocking as it is reprehensible. That said, even for egregious fact patterns, the Court is not free to overlook the law, and the law here is clear. For the reasons detailed above, Defendants' motion to dismiss Plaintiff's prayer for punitive damages is GRANTED. The Clerk of Court is directed to terminate the motion pending at Docket No. 46.

SO ORDERED.

Dated:      June 23, 2020
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

21